FILED
IN THE UNITED STATES DISTRICT COURT
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO
FOR THE DISTRICT OF NEW MEXICO
MAR 2 2 2004

Robert M March
CLERK

ANNETTE L PACHOLSKI,

    Plaintiff,

vs.                                                                                      Civ. No. 03-0701 RHS

JO ANNE B. BARNHART,
Commissioner of Social Security,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing, filed November 14, 2003. [Doc. No. 11]. Plaintiff seeks judicial review of the final decision of the Commissioner of Social Security denying the Plaintiff's applications for Social Security Disability Insurance benefits ("SSDI") and Supplemental Security Insurance benefits ("SSI"). Plaintiff, age 62, alleges a disability which commenced August 16, 2001 due to musculoskeletal problems.

The Commissioner denied Plaintiff's applications for benefits both initially and on reconsideration. After conducting an administrative hearing, the Commissioner's Administrative Law Judge ("ALJ") also denied the applications, concluding that Plaintiff could perform the full range of light work and was therefore not disabled. The Appeals Council denied Ms. Pacholski's request for review, thus the ALJ's decision is the final decision of the

1

Commissioner. Plaintiff now seeks review of that final decision pursuant to 42 U.S.C §405(g).

At the time of the Commissioner's final decision, claimant was 60 years old. She had a high school diploma, some college and vocational school and real estate training and her past relevant work experience has been as a retail clerk.

The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence. Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted). Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests. Id. (citation omitted.)

Plaintiff alleges that the ALJ and the Commissioner failed in their duty to develop the record properly. Plaintiff also contends that the ALJ's pain and credibility findings were contrary to law.

"To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." Thompson at 1486 (citing 42 U.S.C. §423 (d)(1)(A)). Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. Id.; see 20 C.F.R. §§ 404.1520(a - f); 416.920. The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled. Id. (citations omitted).

At the first four levels of the evaluation, the claimant must show: (1) that he or she is not working; (2) that he or she has an impairment or combination of impairments severe

2

enough to limit the ability to do basic work activities; (3) that the impairment meets or equals one of the listing of impairments in 20 C.F.R. Pt. 404, Subpt.P, App.1; or (4) that he or she is unable to perform work done in the past. At the fifth step, the Commissioner must produce evidence regarding the claimant's ability to perform other work. Reyes v. Bowen, 845 F.2d 242, 243 (10th Cir. 1988).

Following the sequential steps, the ALJ found that Ms Pacholski was not disabled at the fourth step of the analysis because she could return to her past relevant work as a retail clerk. Tr. at 16. He further found that she "has failed to establish that she has been unable to perform the mental and physical requirements of this work for any continuous 12 month period at issue." Id.

The medical evidence in the record consists of reports obtained by the Commissioner, a December 14, 2001 consultative examination, a December 20, 2001 cervical x-ray and functional assessments from state agency medical consultants. Plaintiff submitted no hospital or physician records of any treatment for her condition. At the hearing where she was represented by experienced counsel, her attorney stated that there were no medical records that the ALJ did not have. Tr. at 28.

In December of 2001, at the request of the Commissioner, Plaintiff underwent a consultative examination by Nicholas Nillo, M.D. Tr. at 117-119. He found no significant muscle atrophy, no abnormal weakness or motor loss, no restriction of range of motion in arms or legs, no reflex loss and no sensory impairment. His clinical impression was "probable degenerative disease of the cervical spine, not uncharacteristic of claimant's age, with associated cephalalgias secondary to probable cervical arthritis." Tr. at 119. Dr. Nillo ordered x-rays of the cerebral spine. Id. Those x-rays indicated "some degenerative changes

3

of the lower cervical spine and a left paraspinal soft tissue calcification." Tr. at 120.

When state medical consultant David Green, M.D., reviewed Ms. Pacholski's records, he concluded that she was capable of occasional lifting of twenty pounds, frequent lifting of ten pounds, standing or walking for up to six hours and sitting for up to six hours in an eight hour work day. Her ability to push and pull was limited only by her lifting restrictions and no other manipulative or environmental limitations were noted. Tr. at 121-128. State medical consultant Michael Finnegan, M.D., concurred in Dr. Green's assessment.

Ms. Pacholski testified that she suffers from headaches and pain in her left arm, pressure in her chest and difficulty breathing. Tr. at 30-31. She stated that movement of her neck causes numbness in both hands and pressure in the base of her skull, left ear and left eye. Tr. at 32. Plaintiff also testified that she has "unrelenting pain" in her left thumb. Tr. at 41-42.

Ms. Pacholski stated that she is not able to see a doctor for her medical problems because she is not qualified for indigent care and cannot afford to pay for medical care. She provided no past medical records although she testified at the hearing that she received care for injuries she sustained while working at Cashway and Hobby Lobby and while shopping at Wal-Mart. Tr. at 43-48. Although these incidents occurred prior to the time period at issue in her current application for DIB and SSI benefits, the records of that treatment might have assisted the court in evaluating her medical history. Plaintiff also testified that she was examined in the emergency room less than a year before the hearing, Tr. at 54, however no record of that visit was produced. All of the medical evidence considered by the ALJ came from the Administration's consultants.

**First Allegation of Error**

Plaintiff contends that the Commissioner and the ALJ failed in their duty to develop the record properly. She argues that the physician who performed a consultative examination for the Administration was not qualified and that her case should be remanded for a consultative examination by an orthopedic specialist.

The burden to prove disability in a social security case is on the claimant. Hawkins v. Chater, 113 F.3d 1162 (10th Cir.1997) (citing Hill v. Sullivan, 924 F.2d 972, 974 (10th Cir 1991)). However, unlike the typical judicial proceeding, a social security disability hearing is nonadversarial. Id., (citing Dixon v. Heckler, 811 F.2d 506, 510 (10th Cir.1987)), with the ALJ responsible in every case "to ensure that an adequate record is developed during the disability hearing consistent with the issues raised," Hawkins at 1162 (citing Henrie v. United States Dep't of Health & Human Servs., 13 F.3d 359, 360-61 (10th Cir.1993)); 20 C.F.R. S 404.944 (requiring the ALJ to "look[ ] fully into the issues") (other citations omitted). Whether the ALJ met his duty to develop the record depends on whether the ALJ asked questions to ascertain (1) the nature of a claimant's alleged impairments, (2) what on-going treatment and medication the claimant is receiving, and (3) the impact of the alleged impairment on a claimant's daily routine and activities. Musgrave v. Sullivan, 966 F.2d 1371 (10th Cir. 1992). The questions were adequately addressed at the hearing.

Ms. Patchoski argues that the ALJ failed to develop the record in this case because he failed to order an orthopedic consultation for her. On May 21, 2002, Plaintiff's attorney objected to the December 14, 2001 consultative examination performed by Dr. Nillo, and requested that she be evaluated by an orthopedic specialist, arguing that Dr. Nillo lacks the

5

training and expertise to perform an orthopedic examination because the record reflects that his medical specialty is psychiatry, not orthopedics. At the hearing Plaintiff testified that she expected the Commissioner to send her to a neurologist and when the ALJ asked her if she ever asked to see an orthopedic specialist, she responded "I have no problem." Tr. at 49-50. Whatever the reason for the discrepancy between her testimony and her attorney's letter, Plaintiff testified that she was not satisfied with her referral to Dr. Nillo for various reasons including the fact that his diploma was written in Spanish, he provided her only a "little chair" to sit upon and he had no receptionist. Tr. at 24-25.

The Commissioner has broad latitude in ordering consultative exams. See Hawkins v. Chater, 113 F.3d 1162, 1166 (10th Cir. 1997) (citing Diaz v. Sec. of Health & Hum. Servs., 898 F.2d 774, 778 (10th Cir. 1990)). "Nevertheless, it is clear that, where there is a direct conflict in the medical evidence requiring resolution, see 20 C.F.R. § 404.1519a(b)(4), or where the medical evidence in the record is inconclusive, see Thompson v. Sullivan, 987 F.2d 1482, 1491 (10th Cir. 1993), a consultative examination is often required for proper resolution of a disability claim. Similarly, where additional tests are required to explain a diagnosis already contained in the record, resort to a consultative examination may be necessary." Hawkins, 113 F.3d 1162, 1167 (10th Cir. 1997).

Although Dr. Nillo is not an orthopedic surgeon, the Court does not find that he lacks "the training and experience to perform the type of examination" requested as required by 20 C.F.R. § 404.1519g(b). While Dr. Nillo's specialty is relevant to the weight of the evidence, Plaintiff's contention that a licensed M.D. is not qualified to perform a physical examination is without merit. Furthermore, although Plaintiff specifically objects to Dr. Nillo's examination,

6

her statements that she "felt cheated because [she] didn't have anything to hide, and [she] really believed [that she] never in all these years in the course of time and injuries [has] ever had a choice to pick a doctor," Tr. at 24-25, and that when she previously applied for Social Security benefits "it seems like it was five doctors, none of my choice, and they were either supposed to be Social Security or retrain me or do something and ...I got nothing," Tr. at 43, indicate to the Court that any expert chosen by the Social Security Administration might have been objectionable to Ms. Pacholski.

The Commissioner must consider all relevant medical evidence of record in reaching a conclusion as to disability. Baker v. Bowen, 886 F.2d 289, 290 (10th Cir. 1989) (citing Ray v. Bowen, 865 F.2d 222, 226 (10th Cir.1989)). Although Plaintiff testified at length about her past injuries and their impact on her current state of health, she did not provide any medical evidence to assist the ALJ in making his decision.

Both the ALJ and the Appeals Council noted that without Dr. Nillo's report Ms. Pacholski would not have any evidence of her impairment. Tr. at 6, 15. Plaintiff argues that those statements are "demeaning." The allegedly demeaning statements accurately reflect the state of the record in this case.

The Commissioner scheduled Plaintiff for a consultative occupational medicine examination, obtained cervical x-rays and had two medical consultants assess Plaintiff's impairments and their effect on her ability to work. Tr. at 117-128. The ALJ's duty of factual inquiry does not require him to act as the claimant's advocate, Henrie v. United States Department of Health and Human Service, 13 F.3d 359, 361 (10th Cir. 1993). The Commissioner's failure to call in a medical expert trained in a particular medical specialty does

not prevent the Court from finding that the record was properly developed and contained sufficient information for the ALJ to make an informed decision regarding Plaintiff's claim of disability. The opinions of the consulting physicians were supported by specific explanations and clinical findings and were consistent. This Court concludes that the ALJ acted within his discretion with regard to his determination that another consultative examination was not necessary.

**Second Alleged Error**

Plaintiff argues that the ALJ's pain and credibility finding is contrary to law. The ALJ found that "[t]he claimant's testimony of subjective complaints and functional limitations, including pain, was not entirely supported by the evidence as a whole to the disabling degree alleged." Tr. at 15. The ALJ concluded that "the claimant exaggerates her complaints of pain and limitations." Tr. at 16

A claimant's subjective allegation of pain is not sufficient in itself to establish disability. Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993) (citation omitted). Before the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain. Id. (citing Luna v. Bowen, 834 F.2d 161, 163 (10th Cir. 1987); accord, Winfred v. Chater, 92 F.3d 1017, 1020 (10th Cir. 1996). If a "loose nexus" is established between the proven impairment and the claimant's subjective allegations of pain, then the ALJ determines whether, considering all the evidence, both objective and subjective, claimant's pain is in fact disabling. Id.

"When determining the credibility of pain testimony, the ALJ should consider such

8

factors as 'the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of non-medical testimony with objective medical evidence.'" Thompson, 987 F.2d at 1489 (quoting Hargis v. Sullivan, 945 F.2d 1482, 1489 (10th Cir.1991) (quoting Huston v. Bowen, 838 F.2d 1125, 1132 (10th Cir.1988)); Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).

A number of factors were cited by the ALJ to support his conclusion that Plaintiff exaggerated her pain and limitations. The ALJ sufficiently explained why the specific evidence relevant to each factor led him to conclude claimant's subjective complaints were not credible. See Kepler v. Chater, 68 F.3d 387 (10th Cir. 1995). The ALJ noted that Plaintiff's testimony concerning her physical limitations was inconsistent with the results of the consultant's examination. He observed that Plaintiff used no prescription or non-prescription medications, that she had not sought medical treatment for her complaints, that she was able to live alone and work part-time. Tr. at 15-16. Ms. Pacholski testified that she regularly folds and straightens merchandise, mops the floor, and cleans the store where she works part-time along with selling merchandise and using the cash register and that she sometimes works two shifts (eight hours total). Tr. at 55-57.

Plaintiff contends that because her failure to seek medical treatment can be attributed to her inability to pay for such treatment, that evidence is not an adequate reason to discount her credibility. See, e.g. Hayes v. Bowen, 643 F.Supp. 770, 773 (D.D.C.1986) (finding it

9

"impermissible" for the Appeals Council to reject the credibility of an indigent claimant based on a lack of medical evidence in the record).  Plaintiff submitted no evidence indicating that she had ever been refused care by any hospital, clinic or physician for that reason.

Ms. Pacholski's request for a hearing in this case states that she had scheduled an appointment for June of 2002 at a  "poor people clinic," Tr. at 113.  This statement is inconsistent with her testimony regarding the availability of indigent care and  the file contains no evidence that Plaintiff kept the June appointment. However, assuming for the purpose of this discussion that there is no medical provider willing to treat Plaintiff and giving no weight to this factor, the Court finds that  the medical evidence, Ms. Pacholski's description of her daily schedule, and her failure to take  non-prescription pain medication sufficiently support the ALJ's credibility finding.

Nevertheless, the lack of medical records in this case is perplexing. Plaintiff testified that Dr. Kennedy told her he thought she might have Lupus, Tr. at 41, that Dr. Stack thought she had rheumatoid arthritis or arthritis in a muscle, Tr. at 42, that a neurologist said she had "dead hands," Tr. at 43, that an emergency room physician said her "tailbone is, like shards, like slivers of glass or needles," Tr. at 44, and that after her nose was broken she was examined by a nurse practitioner who told her, "you know, they think that if you're getting older, it doesn't matter to you what you look like." Tr at 48.  Ms. Pacholski stated that "I have [been treated in] all kinds of emergency rooms, neighbors would take me" when she had nosebleeds and that she  subsequently was referred to Dr. Pie for care for that problem. Tr. at 52.  Plaintiff testified  that she was not properly treated for the injuries which preceded those contacts with health care providers because: "Cashway declared  bankruptcy three weeks

later;" Tr. at 46, "Farmer's Insurance [which] was supposed to give me lifetime medical was up for investigation of some kind of fraudulent practices;" Tr at 47, "I looked at every attorney in Tucson and they were all terrified of Wal-mart [so] I got nothing out of Wal-mart; Id.," and "I understand the owner [of Hobby Lobby] is from India, that it was voted the fourth worst store... their concerns were not my injury." Id. Although Plaintiff's allegedly inadequate compensation for previous injuries is not relevant to the determination of whether or not she is currently disabled, to the extent that a claimant's work history is probative of credibility because it measures the claimant's willingness and motivation to work, see e.g. Hunter v. Chater, 895 F.Supp. 1454, 1462 (D. Kan. 1995), her testimony regarding her relationship with former employers may not enhance her credibility. At a minimum, her description of referral to a number of health care providers following her injuries appears to conflict with her testimony that she received nothing from some of the companies which were allegedly responsible for those injuries.

Because "[e]xaggerating symptoms or falsifying information for purposes of obtaining government benefits is not a matter taken lightly by this Court," credibility determinations made by an ALJ are generally treated as binding upon review. Gossct v. Bowen, 862 F.2d 802, 806 (10th Cir. 1988) (citing Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983)). This approach seems particularly appropriate where, as here, there is a lack of objective corroborative evidence. See Diaz v. Sec'y of Health & Hum. Serv., 898 F.2d 774, 777 (10th Cir. 1990). On this record, the Court finds no reason it should not give deference to the ALJ's credibility determination.

**Conclusion**

The ALJ and the Commissioner did not fail in their duty to develop the record properly. Another consultative examination would not have been "of material assistance in resolving the issue of disability." See Hawkins, 113 F.3d at 1169. Plaintiff's admitted exertional capacity fully supports the ALJ's determination that she is not disabled. The ALJ's pain and credibility finding is not contrary to law and is supported by substantial evidence.

**IT IS THEREFORE ORDERED** that plaintiff's Motion to Reverse or Remand for a Rehearing, filed November 14, 2003 is **DENIED** and this cause of action is **DISMISSED WITH PREJUDICE**.

*/s/ Robert H. Scott*
ROBERT HAYES SCOTT
UNITED STATES MAGISTRATE JUDGE